IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| PMA Management Corp.,<br>              Petitioner | : | CASES CONSOLIDATED |
| | : | |
| v. | : | |
| | : | |
| Fort Washington Surgery Center<br>(Bureau of Workers' Compensation<br>Fee Review Hearing Office),<br>              Respondent | :<br>:<br>:<br>: | No. 1208 C.D. 2023 |
| | : | |
| Fort Washington Surgery Center,<br>              Petitioner | :<br>: | |
| | : | |
| v. | : | |
| | : | |
| PMA Management Corp. (Bureau<br>of Workers' Compensation Fee Review<br>Hearing Office),<br>              Respondent | :<br>:<br>:<br>: | No. 1282 C.D. 2023<br>Submitted: March 4, 2025 |


BEFORE:    HONORABLE ANNE E. COVEY, Judge
           HONORABLE LORI A. DUMAS, Judge
           HONORABLE MATTHEW S. WOLF, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                                    FILED: April 3, 2025


Fort Washington Surgery Center (Provider) and PMA Insurance Company (PMA) each petition this Court for review of the Pennsylvania Department of Labor and Industry (Department), Bureau of Workers' Compensation (Bureau) Medical Fee Review Hearing Office's (Hearing Office) September 26, 2023 order (HO Order) granting in part and denying in part Provider's Requests for Hearing to Contest Fee Review Determinations at Nos. MF-619939 (Surgical Code Determination) and MF-624690 (Device Code Determination). Hearing Officer

Barry Keller (HO Keller) held that with respect to the Surgical Code Determination, Provider is entitled to reimbursement of procedure codes at the applicable rate the Centers for Medicare and Medicaid Services (CMS) established for reimbursement of procedures under Medicare, rather than the fee schedule established under the Pennsylvania Workers' Compensation (WC) Act (Act)[1] (WC Fee Schedule) and, with respect to the Device Code Determination, Provider is not entitled to payment because the multiple surgical procedure discount did not apply, billing modifiers 59[2] and SG[3] should not be billed, Code 95972 bundles into payment of the surgical procedure codes, and device codes are bundled with payment for surgical procedures. There are two issues before this Court: (1) whether the surgical procedure code billed should be paid at the Medicare reimbursement rate for the year in which the service was performed; and (2) whether the equipment codes billed were bundled with the payments for the surgical procedures billed. After a thorough review, this Court reverses in part and affirms in part.

**Background**

On December 14, 2017, Tamika Delaney (Claimant) sustained injuries in the course of her employment with the City of Philadelphia (Employer). Claimant sought medical care for her work injuries from Steven Rosen, M.D., who performed an ambulatory surgical procedure, i.e., a lumbar spinal cord stimulator implant (Surgical Procedure), on June 9, 2021 at Provider's ambulatory surgical center (ASC).

On July 23, 2021, Provider billed PMA $61,017.00 for the treatment and services rendered to Claimant on June 9, 2021 (July Bill).[4] Provider's July Bill

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710.
[2] The 59 modifier denotes that the procedure was performed at a separate anatomic site.
[3] The SG modifier denotes a surgical procedure.
[4] The July Bill is the subject of the Surgical Code Determination.

2

for the Surgical Procedure included the following Current Procedural Terminology (CPT) codes (CPT Code), descriptions, and charges:

| Code | Description | Charge |
|---|---|---|
| 63685-SG[5] | Ambul Surg | $50,313.00 |
| 63650-SG-59[6] | Ambul Surg | $7,204.00 |
| 95972-SG[7] | Ambul Surg | $3,500.00 |
| **Total** | | **$61,017.00** |

On November 19, 2021, PMA sent Provider an Explanation of Benefits (EOB), which indicated that PMA issued Provider a check in the amount of $1,593.83 for the July Bill.

---

[5] CPT Code 63685 refers to: "Insertion or replacement of spinal neurostimulator pulse generator or receiver, direct or inductive coupling[."] Reproduced Record (R.R.) at 219a (quoting CPT 2021 Professional (2021 Professional), published by the American Medical Association at 472). The page numbers of Provider's/PMA's Reproduced Record do not include the small "a" required by Pennsylvania Rule of Appellate Procedure (Rule) 2173, Pa.R.A.P. 2173 ("[T]he pages of . . . the reproduced record . . . shall be numbered separately in Arabic figures . . . thus, 1, 2, 3, etc., followed . . . by a small a, thus 1a, 2a, 3a, etc."). Therefore, in compliance with Rule 2173, this Court has added a small "a" to its Reproduced Record page references. The SG modifier reflects a surgical procedure.

[6] CPT Code 63650 refers to: "Percutaneous implantation of neurostimulator electrode array, epidural[.]" R.R. at 219a (quoting 2021 Professional at 471).

[7] CPT Code 95972 refers to:

> Electronic analysis of implanted neurostimulator pulse generator/transmitter (e[.]g[.], contact group[s], interleaving, amplitude, pulse width, frequency [Hz], on/off cycling, burst, magnet mode, dose lockout, patient selectable parameters, responsive neurostimulation, detection algorithms, closed loop parameters, and passive parameters) by physician or other qualified health care professional; with brain cranial nerve, spinal cord, peripheral nerve, or sacral nerve, neurostimulator pulse generator/transmitter, without programming with complex spinal cord or peripheral nerve (e[.]g[.], sacral nerve) neurostimulator pulse generator/transmitter programming by physician or other qualified health care professional[.]

R.R. at 219a (quoting 2021 Professional at 781).

On December 1, 2021, Provider billed PMA $63,797.50 for devices and/or supplies used during Claimant's Surgical Procedure on June 9, 2021 (December Bill).[8]  Provider's December Bill for devices and/or supplies included the following Healthcare Common Procedure Coding System (HCPCS) Codes (HCPCS Code), descriptions, and charges:

| Code | Description | Charge |
|---|---|---|
| L8680-SG[9] | Implantable Equipment | $8,000.00 |
| L8680-SG | Implantable Equipment | $8,000.00 |
| L8683-SG[10] | Ambul Surg | $4,185.00 |
| L8687-SG[11] | Implantable Equipment | $37,487.00 |
| L8689-SG[12] | Implantable Equipment | $6,125.00 |
| **Total** | | **$63,797.00** |

On December 29, 2021, PMA sent Provider an EOB denying payment for the December Bill,[13] explaining:

---

[8] The December Bill is the subject of the Device Code Determination.

[9] HCPCS Code L8680 refers to: "Implantable neurostimulator electrode, each[.]"  R.R. at 219a (quoting HCPCS 2021 Level II Professional edition (2021 Level II) at 381).

[10] HCPCS Code L8683 refers to: "Radiofrequency transmitter (external) for use with implantable neurostimulator radiofrequency receiver[.]"  R.R. at 219a (quoting 2021 Level II at 381).

[11] HCPCS Code L8687 refers to: "Implantable neurostimulator pulse generator, dual array, rechargeable, includes extension[.]"  R.R. at 220a (quoting 2021 Level II at 381).

[12] HCPCS Code L8689 refers to: "External recharging system for battery (internal) for use with implantable neurostimulator, replacement only[.]"  R.R. at 220a (quoting 2021 Level II at 381).

[13] Provider complains that despite its entitlement to $79,404.75, PMA paid only $1,593.83 for the procedure, including the costly, complex implanted devices as follows:

| Code | Amt. Billed | Amt. Owed | Amt. PMA Paid |
|---|---|---|---|
| 63650 | $7,204.00 | $4,473.13 | $531.28 |
| 63685 | $50,313.00 | $23,894.02 | $1062.55 |
| L8680-SG | $8,000.00 | $6,400.00 | $0.00 |
| L8680-SG | $8,000.00 | $6,400.00 | $0.00 |

4

> The billed service is not payable according to Chapter 127. [WC] Medical Cost Containment [(MCC), 34 Pa. Code §], 127.125 . . . . Payment to [p]roviders of [o]utpatient [s]urgery in an ASC are based on the ASC payment groups and include the Medicare list of covered services and related classifications in these groups. Only surgical services may be reimbursed.

Supplemental Reproduced Record (S.R.R.) at 1b.

Provider filed Applications for Fee Review Pursuant to Section 306(f.1) of the Act[14] on September 23, 2021, and January 4, 2022. On October 8, 2021, the Medical Fee Review Section (MFRS) circulated the Surgical Code Determination which concluded that **Provider was due a total amount of $1,593.83 for services provided as identified in the July Bill** as follows: (1) payment of $1,062.55 of the $50,313.00 billed fee for CPT Code 63685-SG; and (2) payment of $531.28 of the $7,204.00 billed fee for CPT Code 63650-SG-59. For both payments, the MFRS indicated that payment was based upon "[t]he surgical procedure(s) billed fall(s) within the Medicare Multiple Surgical Guidelines. The first procedure is paid at 100% of the [WC] Fee Schedule and the remaining procedures are paid at 50% of the [WC] Fee Schedule." Reproduced Record (R.R.) at 10a. The MFRS also indicated that Provider's submitted documentation supported the level of services Provider delivered to Claimant. Finally, the MFRS denied payment of CPT Code 95972-SG because the billed code is an integral component of the primary procedure and may not be billed separately. On October 14, 2021, Provider filed a Request for

| | | | |
|---|---|---|---|
| L8683-SG | $4,185.00 | $3,348.00 | $0.00 |
| L8687-SG | $37,487.00 | $29,989.60 | $0.00 |
| L8689-SG | $6,125.00 | $4,900.00 | $0.00 |
| | | -------------- | ------------ |
| **TOTAL** | | **$79,404.75** | **$1,593.83** |

[14] Renumbered as Section 306(f.1) and amended by Section 8 of the Act of July 2, 1993, P.L. 190, No. 44 (Act 44), 77 P.S. § 531.

5

Hearing to Contest Fee Review Determination with the Hearing Office for the Surgical Code Determination.

On January 12, 2022, the MFRS circulated the Device Code Determination which concluded that **Provider was due $51,037.60 for equipment provided** as identified in the December Bill as follows:

1. Payment of $6,400.00 for each unit of HCPCS Code L8680-SG (2 units totaling $12,800.00). The billed amount was $8,000.00 for each unit ($16,000.00 total).

2. Payment of $3,348.00 of the $4,185.00 billed fee for HCPCS Code L8683-SG.

3. Payment of $29,989.60 of the $37,487.00 billed fee for HCPCS Code L8687-SG.

4. Payment of $4,900.00 of the $6,125.00 billed fee for HCPCS Code L8689-SG billed amount was $6,125.00.

The MFRS provided:

> Documentation submitted by [] Provider supports the level of services, and/or number of units, delivered and shall be paid. Per Section 127.102[ of the MCC Regulations,[15]] [PMA] has not met its burden of demonstrating the existence of a medicare [sic] payment mechanism for the particular treatment, accomodation [sic], product or service. Therefore, 80% of [] Provider's charge shall be reimbursed.

R.R. at 22a.

On January 19, 2022, and January 26, 2022, PMA and Provider each filed a Request for Hearing to Contest Fee Review Determination (Hearing Requests) with the Hearing Office for the Device Code Determination. PMA stated in its Hearing Request that L-Codes are not separately payable to an ASC because

---

[15] 34 Pa. Code § 127.102.

6

they bundle into other CPT Codes. Provider averred in its Hearing Request that L-Codes should be paid.

On October 20 and December 1, 2021, HO Keller conducted hearings. PMA offered the deposition transcript of Michael Miscoe (PMA's Expert), who is the president of Practice Masters, Inc., which provides forensic coding and analysis/compliance work for providers, plus PMA's Expert's report and curriculum vitae. Provider presented the deposition of Timothy Mosco (Provider's Expert), a senior principal for SunStone Consulting, who has worked with hospitals and health systems on charge process, reimbursement, and compliance initiatives, and previously worked with the Bureau to develop the application for the fee review process. Provider also submitted Provider's Expert's report and curriculum vitae. The parties also submitted expert rebuttal reports.

On September 26, 2023, HO Keller issued the HO Order, wherein he found PMA's Expert's testimony credible, and Provider's Expert's testimony lacked credibility except where his testimony was consistent with PMA's Expert's opinions. HO Keller also made the following findings: (1) CPT Code 63650 was properly billed, is not subject to the multiple surgical procedure discount, should not be billed with 59 and SG modifiers, and is payable in accordance with the **CMS** published ASC fee schedule for the respective year of the date of service at issue; (2) CPT Code 95972-SG is bundled into the payment of the surgical procedure codes that were billed; and (3) the L-Codes at issue were bundled with the payment for the surgical procedures. Provider and PMA appealed to this Court.[16]

_____

[16] Per this Court's January 26, 2024 Order, the matters were consolidated.

> [This Court's] review in medical fee review cases determines whether constitutional rights were violated, whether an error of law was committed, or whether the necessary findings of fact were supported by substantial evidence. Regarding questions of law, [this

7

PMA requests this Court to vacate the portion of the HO Order requiring payment of CPT Code 63650 at **Medicare's 2021 reimbursement rate** and direct that payment for that procedure be made at 100% of the **WC Fee Schedule** rate for the treatment in 2021. PMA further asks this Court to affirm the HO Order to the extent that it held that the L-Codes are not separately compensable. Conversely, Provider requests this Court to reverse the HO Order and direct PMA to reimburse provider for CPT Code 63650 as well as 80% of the charges for the L-Codes in an amount totaling $79,404.75, plus interest.

## Discussion

Initially, the Act requires that provider reimbursement be based on a WC reimbursement schedule that is independent of the current Medicare reimbursement schedule.[17] *See* Section 306(f.1)(3) of the Act, 77 P.S. § 531(3). The Act also requires that reimbursement codes representing medical procedures and devices must be bundled[18] in accordance with Medicare requirements. *See id.* Medicare has increased the Medicare reimbursement schedule to reflect rebundling directives modified in 2008, but the Act has not increased the reimbursement schedule.

Section 306(f.1) of the Act contains WC MCC provisions for reimbursement for medical treatment payable under the Act. Originally, the WC

---

Court's] scope of review is plenary and [this Court's] standard of review is *de novo*.

*Workers' First Pharmacy Servs., LLC v. Bureau of Workers' Comp. Fee Rev. Hearing Off. (Gallagher Bassett Servs.)*, 225 A.3d 613, 616 n.3 (Pa. Cmwlth. 2020) (citation omitted).

[17] This will be explained more fully below.

[18] In 2008, CMS adopted new bundling rules for ASCs to include payment of implantable devices with the reimbursement of the surgical code. CMS's bundling changes meant that, in 2008, Medicare increased reimbursement rates for the procedures defined as *device-intensive procedures* to account for the inclusion of the devices in the payment of the primary procedure code.

Fee Schedule started with capping fees for treatment at 113% of the applicable Medicare reimbursement rate. *See* Section 306(f.1)(3)(i) of the Act, 77 P.S. § 531(3)(i). Until December 31, 1994, the reimbursement rates for medical treatment changed with modifications in the Medicare reimbursement rates for the services. *See* Sections 127.101 and 127.151 of the MCC Regulations, 34 Pa. Code §§ 127.101, 127.151. On January 1, 1995, the cap, or "maximum allowance for a health care service[,]" essentially froze at the 113% of Medicare rate and, thereafter, reimbursement rates were updated annually only in accordance with the percentage change in the statewide average weekly wage (SAWW). Section 306(f.1)(3)(ii) of the Act, 77 P.S. § 531(3)(ii). Specifically, Section 306(f.1)(3) of the Act states, in pertinent part:

> (ii) Commencing on January 1, 1995, the maximum allowance for a health care service covered by subparagraph (i) shall be updated as of the first day of January of each year. The update, which shall be applied to all services performed after January 1 of each year, shall be equal to the percentage change in the [SAWW]. Such updates shall be cumulative.
>
> . . . .
>
> (viii) **A provider shall not fragment or unbundle charges imposed for specific care except as consistent with Medicare**. Changes to a provider's codes by an insurer shall be made only as consistent with Medicare and when the insurer has sufficient information to make the changes and following consultation with the provider.

77 P.S. § 531(3)(ii), (viii) (emphasis added).

> This Court has observed:
>
> The fees allowed to a medical provider for the treatment of a compensable work injury are tied to the reimbursement rates authorized under the Medicare program. The Department's [MCC] [R]egulation[s] state[] as follows:

9

(a) *Generally, medical fees for services rendered under the* [A]*ct shall be capped at 113% of the Medicare reimbursement rate applicable in this Commonwealth under the Medicare* [*p*]*rogram* for comparable services rendered. The medical fees allowable under the [A]ct shall fluctuate with changes in the applicable Medicare reimbursement rates for services rendered prior to January 1, 1995. Thereafter, *for services rendered on and after January 1, 1995, medical fees shall be updated* only in accordance with [Sections] 127.151--127.162 [of the MCC Regulations, 34 Pa. Code §§ 127.151-127.162] (relating to medical fee updates).

34 Pa. Code § 127.101(a) (emphasis added).

*Pa. Physical Therapy Ass'n v. Oleksiak*, 265 A.3d 849, 851 (Pa. Cmwlth. 2021).

Accordingly, Section 127.151 of the MCC Regulations provides:

(a) Changes in Medicare reimbursement rates prior to January 1, 1995, shall be reflected in calculations of payments to providers under the [A]ct.

(b) The effective date for these rate changes under the Medicare Program shall also be the effective date for the fee changes under the [A]ct. The new rates shall apply to all treatment and services provided on and after the effective date of the rate change.

34 Pa. Code § 127.151.

Section 127.152 of the MCC Regulations states:

(a) Changes in Medicare reimbursement rates on and after January 1, 1995, may not be included in calculations of payments to providers under [Section 8 of the Act of July 2, 1993, P.L. 190, No. 44 (Act 44), 77 P.S. § 531].

(b) Medical fee updates on and after January 1, 1995, shall be calculated based on the percentage changes in the [SAWW], as published annually by the Department in the *Pennsylvania Bulletin*. These updates shall be effective on January 1 of each year, and they shall be cumulative.

10

34 Pa. Code § 127.152.

Section 127.153 of the MCC Regulations provides:

(a) On and after January 1, 1995, outpatient providers whose payments under the [A]ct are based on the Medicare [F]ee [S]chedule under [Sections 127.103-127.108 of the MCC Regulations, 34 Pa. Code] §§ 127.103-127.108[,] shall be paid as follows: the amount of payment authorized shall be frozen on December 31, 1994, and updated annually by the percentage change in the [SAWW].

(b) On and after January 1, 1995, adjustments and modifications by [the Health Care Financing Administration (]HCFA[)] relating to a change in description or renumbering of any HCPCS [C]ode will be incorporated into the basis for determining the amount of payment as frozen in subsection (a) for services rendered under the [A]ct.

(c) On and after January 1, 1995, payment rates under the [A]ct for new HCPCS [C]odes will be based on the rates allowed in the Medicare fee schedule on the effective date of the new [HCPCS C]odes. These payment rates shall be frozen immediately, and thereafter updated annually by the percentage change in the [SAWW].

34 Pa. Code § 127.153.

With respect to ASCs, Section 127.125 of the MCC Regulations directs:

Payments to providers of outpatient surgery in an ASC, shall be based on the ASC payment groups defined by HCFA, and shall include the Medicare list of covered services and related classifications in these groups. This payment amount shall be multiplied by 113%. For **surgical procedures** not included in the Medicare list of covered services, payments shall be based on 80% of the usual and customary charge.[19]

---

[19] Notably, Section 127.102 of the MCC Regulations also provides:

11

34 Pa. Code § 127.125 (emphasis added).

Section 127.159 of the MCC Regulations also pertains specifically to ASCs and states: "On and after January 1, 1995, payments to providers of outpatient surgery in ASCs shall be as follows: the amount of the payment in [Section] 127.125 [of the MCC Regulations] (relating to ASCs) shall be frozen on December 31, 1994, and updated annually by the percentage change in the [SAWW]." 34 Pa. Code § 127.159. Section 127.204 of the MCC Regulations prohibits a provider from "fragment[ing] or unbundl[ing] charges except as consistent with Medicare." 34 Pa. Code § 127.204.

> In short, the 1995 Medicare fee schedule is the foundation of the Pennsylvania system for setting the payment allowed to a medical provider to treat a compensable work injury. Thereafter, the "frozen" 1995 Medicare fee schedule is adjusted annually for inflation in accordance with the "percentage change in the [SAWW]." 34 Pa. Code § 127.153(a). When a new outpatient service code is added to the Medicare fee schedule, payments under the Act are based on the rate allowed "in the Medicare fee schedule on the effective date of the new codes." 34 Pa. Code § 127.153(c). When a new outpatient service is added to the Medicare payment mechanism, the payment to the provider is no longer based on 80% of the usual and customary charge. 34 Pa. Code § 127.103(c). On the other hand, "a change in description or renumbering" of any codes in the Medicare fee schedule is simply "incorporated" into the schedule that was "frozen" as of

---

If a Medicare payment mechanism does not exist for a particular treatment, accommodation, product[,] or service, the amount of the payment made to a health care provider shall be either 80% of the usual and customary charge for that treatment, accommodation, product[,] or service in the geographic area where rendered, or the actual charge, whichever is lower.

34 Pa. Code § 127.102.

December [3]1, 1994, "and updated." 34 Pa. Code § 127.153(a)-(b).

As an accommodation to medical providers and employers (and their insurers), the Department produces the [WC] Fee Schedule[] and updates it based on the [SAWW] as published by the Department in the *Pennsylvania Bulletin*. 34 Pa. Code § 127.152(b). The [WC] Fee Schedule is posted on the Department's webpage. The Department uses the codes of the [HCFA] developed for Medicare for the services listed in the [WC] Fee Schedule. The [WC] Fee Schedule sets forth the allowable medical fee, as determined under the [MCC R]egulation, for each code.

*Oleksiak*, 265 A.3d at 852-53 (italics added; footnotes omitted).

Thus, the Act requires that providers bill for procedures consistent with Medicare coding decisions pertaining to bundling, notwithstanding that the WC Fee Schedule did not change after Medicare implemented new bundling rules to include payment of implantable devices with the reimbursement of the surgical code. Accordingly, although reimbursements for those devices are included in the increased **Medicare** procedure code reimbursement rates, the devices are not compensable under the Act since the Act requires compliance with Medicare bundling rules, and the Act has not increased reimbursement rates to reflect the bundling within the procedure codes.[20]

PMA contends that HO Keller erred by directing PMA to pay CPT Code 63650 at the 2021 **Medicare** reimbursement rate, rather than at the 2021 **WC Fee Schedule** amount. PMA asserts:

Contrary to the provisions of the [Act] and [the MCC R]egulations, HO Keller ordered payment of . . . CPT [Code] 63650 at the Medicare rate as of 2021 - the date of treatment in question. Although he doesn't explain the reason for ordering payment at the 2021 rate used by CMS, presumably, it is because **both expert witnesses testified**

---

[20] Despite that the devices may not be billed separately per the Medicare bundling rules, the Act does not provide for their reimbursement within the bundled code.

**that in 2008 CMS adopted new bundling rules <u>to</u>** <u>**include payment of implantable devices with the**</u> <u>**reimbursement of the surgical code**</u>. The bundling changes by CMS meant that <u>**in 2008 Medicare increased**</u> <u>**reimbursement rates for the types of procedures**</u> <u>**defined** . . . **as "device-intensive procedures" to account**</u> <u>**for the inclusion of the devices**</u> **in the payment of the primary procedure code**.

[The] HO [Order] in this regard appears to be an attempt to "fix" the [WC] Fee Schedule to account for payment of the devices as part of payment for the procedures. However, there is no support in the Act for this action.

PMA Br. at 14 (bold and underline emphasis added).

Notwithstanding Medicare's adjustment to the reimbursement rates to reflect the new 2008 bundling rules, Pennsylvania's rate freeze meant that reimbursement rates were **updated annually only in accordance with the percentage change in the SAWW** and, thus, in contrast to changes made for Medicare reimbursements to reflect the modified Medicare bundling rules, **no adjustment was made to reimbursements under the Act in response to the modified bundling rules**. PMA observes:

Arguably, in 2008 the [Bureau] could have reviewed the significant change in the manner in which CMS defined and reimbursed "device-intensive procedures" as essentially creating "new codes" because in light of the bundling changes CMS no longer separately allowed for reimbursement of the expensive implantable devices themselves. If the [Bureau] viewed CPT 63650 as a new code when CMS made these changes, the proper manner to adjust payments would have been to place the code on the [WC] [F]ee [S]chedule at 113% of the 2008 CMS reimbursement rate, and then immediately froze [sic] the rate with annual increases consistent with all other reimbursements for medical treatment. However, the [Bureau] did not do so – [it] ha[s] continued with the reimbursement rates for these procedures as frozen effective January 1, 1995, with the only reimbursement

14

> updates being the annual increases consistent with the percentage change in the SAWW.
>
> It is not clear that the HO has the authority to adjust reimbursement rates in the absence of the [Bureau] failing to do so. However, even if this Court finds the HO, as an agent of the [Bureau], can determine a code is new for purposes of adjusting the reimbursement rate, there is no authority in the statute or regulations that allows the [Bureau] (or the HO) to order payment at the Medicare reimbursement rate for the year the treatment is rendered.

PMA Br. at 14-15.

The Act and the MCC Regulations are unambiguous. Section 306(f.1)(3)(ii) of the Act describes that, effective January 1, 1995, the maximum allowance for "all services performed after January 1 of each year, shall be equal to the percentage change in the [SAWW]. Such updates shall be cumulative." 77 P.S. § 531(3)(ii). Further, Section 127.152 of the MCC Regulations prohibits Medicare rate changes occurring on or after January 1, 1995, from being included in payment calculations, and directs that such calculations be based on percentage changes in the SAWW. *See* 34 Pa. Code § 127.152. Accordingly, it is clear that the Bureau erred when it ordered that the surgical procedure code billed be paid at the **2021 Medicare** reimbursement rate.

Next, Provider asserts that the Hearing Office erred by concluding that the L-Codes were not payable, rather, payment for the L-Code devices were bundled with the payments for the surgical procedures billed because only the reimbursement rate for medical benefits froze as of December 31, 1994, and the WC Fee Schedule continues to follow Medicare's bundling rules. Provider argues that the HO Order is necessarily erroneous because, the determination that the L-Codes were bundled within the CPT Codes prevents a provider from adequately recouping its expenses. As a result, claimants would be denied such procedures since no provider would be willing to perform them.

15

Notwithstanding the Experts' opinions regarding the proper application of the Act and the MCC Regulations, this Court is charged with interpreting Commonwealth statutes and agency regulations.

> Because the issue requires us to decide the meaning of statutory text, we consult the rules of statutory interpretation. "The polestar of statutory construction is to determine the intent of the General Assembly." *Hannaberry HVAC v. Workers' Comp. Appeal Bd. (Snyder, Jr.)*, . . . 834 A.2d 524, 531 ([Pa.] 2003) (citing Section 1921(a) of the Statutory Construction Act [of 1972], 1 Pa.C.S. § 1921(a)). The words the General Assembly chose, when "clear and free from all ambiguity . . . are presumed to be the best indication of legislative intent." *Id.* (citation omitted). We may only consult administrative interpretations of a statute when a statute is ambiguous. 1 Pa.C.S. § 1921(c). We consider a statute ambiguous where its text gives rise to "at least two reasonable interpretations." *Warrantech Consumer Prods. Servs., Inc. v. Reliance Ins. Co. in Liquidation*, . . . 96 A.3d 346, 354-55 ([Pa.] 2014).

*700 Pharmacy v. Bureau of Workers' Comp. Fee Rev. Hearing Off.*, 315 A.3d 914, 923-24 (Pa. Cmwlth. 2024), *appeal granted*, (Pa. No. 274 MAL 2024, filed Dec. 11, 2024).

Both experts testified that Medicare has bundled the identified L-Code devices within the relevant CPT Codes and, thus, Medicare would not pay the L-Codes separately. The application of the modified CMS bundling rules to include implantable device payments in surgical code reimbursements, without implementing Medicare's increased surgical code reimbursements, presents the same concerns with respect to the L-Code payments. Provider contends that no Medicare payment mechanism exists for the L-Codes and, thus, it is entitled to 80% of the usual and customary charge for that product. *See* 34 Pa. Code § 127.102; *see also* 34 Pa. Code § 127.125 (which provides for 80% ASC reimbursement of **surgical procedures** not included in the Medicare list of covered services).

16

Nonetheless, Act 44 included in Section 306(f.1)(3) of the Act both subpart ii, which froze the Medicare reimbursement rate for medical benefits as of December 31, 1994, **and** subpart vii, which, without any similar date restriction, prohibits a provider from fragmenting or unbundling charges except as consistent with Medicare. *See* 77 P.S. § 531(3)(ii), (vii). These provisions are unambiguous. Accordingly, this Court must infer that the General Assembly intended for providers to adhere to Medicare bundling requirements after December 31, 1994. Further, Section 127.102 of the MCC Regulations does not authorize payment for the L-Codes. That section provides for 80% reimbursement "[i]**f a Medicare payment mechanism does not exist** . . . ." 34 Pa. Code § 127.102 (emphasis added). Because Medicare has bundled reimbursement for the devices which are represented by L-Codes, a Medicare payment mechanism **does** exist. To permit providers to receive WC fee reimbursement for devices that Medicare has bundled would directly undermine Section 306(f.1)(3)(vii) of the Act, and Sections 127.102 and 127.204 of the MCC Regulations. Therefore, this Court is constrained to affirm The HO Order with respect to payment of the L-Codes.[21]

### Conclusion

For all of the above reasons, this Court reverses the HO Order to the extent that it directed that the surgical procedure code billed be paid at the Medicare reimbursement rate for the year in which the service was performed, rather than at

---

[21] Provider billed $61,017.00 for the surgical procedure and $63,797.50 for devices. This Court is cognizant that its decision will result in Provider recouping only $1,593.83 for services rendered. Notwithstanding, this Court is constrained to follow the law. Because the Act requires that provider reimbursement be based on a WC reimbursement schedule that is independent of the current Medicare reimbursement schedule reflecting bundling, and also requires that reimbursement codes representing medical procedures and devices must be bundled in accordance with Medicare requirements, Provider will be left essentially uncompensated. Accordingly, this Court urges the General Assembly to remedy this issue.

17

the WC Fee Schedule amount for 2021; and affirms the HO Order in all other respects.

_____
ANNE E. COVEY, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| PMA Management Corp., Petitioner | : | CASES CONSOLIDATED |
| | : | |
| v. | : | |
| | : | |
| Fort Washington Surgery Center (Bureau of Workers' Compensation Fee Review Hearing Office), Respondent | : | No. 1208 C.D. 2023 |
| | : | |
| Fort Washington Surgery Center, Petitioner | : | |
| | : | |
| v. | : | |
| | : | |
| PMA Management Corp. (Bureau of Workers' Compensation Fee Review Hearing Office), Respondent | : | No. 1282 C.D. 2023 |

O R D E R

AND NOW, this 3rd day of April, 2025, the Bureau of Workers' Compensation Medical Fee Review Hearing Office's September 26, 2023 order is REVERSED to the extent that it directed that the surgical procedure code billed be paid at the Medicare reimbursement rate for the year in which the service was performed, rather than at the Workers' Compensation fee schedule amount for 2021, and is AFFIRMED in all other respects.

_____
ANNE E. COVEY, Judge